# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jennie Marie Loeffler,                                     File No. 13-cv-2060 (MJD/TNL)

            Plaintiff,

v.

City of Anoka; City of Burnsville; Dakota                 **REPORT &**
County; Dakota County Communications                      **RECOMMENDATION**
Center; City of Duluth; City of Eagan; City of
Fairmont; City of Farmington; City of Hancock;
Isanti County; Mille Lacs County; City of
Minneapolis; City of Morris; Renville County;
Rice County; City of Richfield; City of
Roseville; City of St. Francis; City of St. Paul;
City of Staples; Wright County; Yellow
Medicine County; Michael Campion, acting in
his individual capacity as Commissioner of the
Minnesota Department of Public Safety;
Ramona Dohman, acting in her individual
capacity as Commissioner of the Minnesota
Department of Public Safety; John and Jane
Does (1-30), acting in their individual capacity
as officers, supervisors, staff, employees,
independent contractors or agents of the
Minnesota Department of Public Safety; Entity
Does (1-50), including cities, counties,
municipalities, and other entities sited in
Minnesota departments and agencies; A Female
Officer to be Later Named, Acting in Her
Individual Capacity as a Law-Enforcement
Officer for the City of Duluth; City of Lakeville;
City of Mankato; City of Milaca; City of New
Prague; City of Pequot Lakes; and Saint Louis
County,

            Defendants.

Sonia L. Miller-Van Oort, Sapientia Law Group PLLC, 12 South Sixth Street, Suite 1242, Minneapolis, MN 55402 (for Plaintiff); and

Nick D. Campanario, St. Louis County Attorney's Office, St. Louis County Courthouse, 100 North Fifth Avenue West, Room 501, Duluth, MN 55802 (for Defendant Saint Louis County).

# I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Saint Louis County's (the "County") Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF No. 114). This motion has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable Michael J. Davis, Chief District Judge of the United States District Court for the District of Minnesota, pursuant to 20 U.S.C. § 636(b)(1)(B) and D. Minn. LR 72.1(b). (ECF No. 119.)

The parties agreed that the Court may issue its report and recommendation without a hearing and consequently no hearing on the motion was held. (ECF No. 115.)

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY RECOMMENDED** that the County's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF No. 114) be **GRANTED**.

## II. BACKGROUND[1]

Plaintiff brings claims under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.*; 42 U.S.C. § 1983; and Minnesota common law invasion of privacy based on accesses of her personal and private driver's license information.  (Compl. ¶¶ 6, 179-246, 272-77, ECF No. 1.)  This is one of several actions filed in this District alleging unlawful access of private data.  *See, e.g.*, *Kiminski v. Hunt*, File No. 13-cv-185 (JNE/TNL) (consolidated cases); *Kost v. Hunt*, File No. 13-cv-583 (JNE/TNL); *Potocnik v. Anoka Cnty.*, File No. 13-cv-1103 (DSD/TNL) (Ltr. to Hon. Michael J. Davis, Mar. 25, 2014, listing pending DPPA cases (ECF No. 98)); *see also Heglund v. Aitkin Cnty.*, No. 14-cv-296 (ADM/LIB), 2014 WL 4414821, at *2 n.1 (D. Minn. Sept. 5, 2014) (noting at least 28 cases).  On June 24, 2014, this Court issued a Report & Recommendation on motions to dismiss filed by certain other defendants in this matter (ECF No. 102) (the "Prior R&R").  2014 WL 4449674 (D. Minn. June 24, 2014), *adopted in part*, 2014 WL 4449692 (D. Minn. Sept. 9, 2014).  Part II therein sets forth a more complete summary of the global facts applicable to the instant matter and is hereby incorporated by reference. *Id.* at *1-3.

### A.  The Database & Records Maintained

The Driver and Vehicle Services Division of the Minnesota Department of Public Safety ("DPS") maintains a database with certain information on Minnesota drivers, including their names, dates of birth, license numbers, addresses, license photos, physical

---

[1] In ruling on a motion for judgment on the pleadings, the Court "accept[s] as true all facts pled by [the nonmoving party] and draw[s] all reasonable inferences from the pleadings in [the nonmoving party's] favor." *Franklin High Yield Tax-Free Income Fund v. Cnty. of Martin*, 152 F.3d 736, 738 (8th Cir. 1998) (quoting *Lion Oil Co. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir. 1996)).

descriptions (weight, height, and eye color), Social Security numbers, and certain health and disability information.  (Compl. ¶¶ 63-64.)  The disclosure of this information is regulated by the DPPA.  *Maracich v. Spears*, 133 S. Ct. 2191, 2195 (2013).  This information is categorized as "personal information" or "highly restricted personal information," the access or disclosure of which is allowed only for certain permissible uses.  18 U.S.C. §§ 2721(a), (b), 2722(a), 2725(3), (4).  One of the purposes permitted under the DPPA is access "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, state, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1).

### B.  Accesses of Plaintiff's Information

Plaintiff was married to a City of Lakeville law enforcement officer until the dissolution of their marriage following her then-husband's affair with a Duluth police officer.  (Compl. ¶¶ 52, 54.)  Sometime after she became aware of the affair, Plaintiff became concerned that her personal information in the DPS database had been impermissibly accessed.  (*Id.* ¶ 56.)  She attempted on two different occasions to receive an audit of accesses to her information from the DPS.  (*Id.* ¶¶ 56-57, 60-62.)  The DPS refused to release the information when Plaintiff made her first request in 2011, but provided her with an audit upon her second request in 2013.  (*Id.* ¶¶ 57, 61-62.) Collectively, Plaintiff alleges that "law-enforcement personnel viewed her private information more than 130 times from 2003 to 2012."  (*Id.* ¶ 2.)  Plaintiff alleges that Defendants viewed "her home address, color photograph or image, date of birth, eye

4

color, weight and driver identification number." (*Id.* ¶ 96.) She alleges that "Defendants accessed the information for personal reasons completely unrelated to their positions as law enforcement officers." (*Id.* ¶ 95.) Plaintiff further alleges that she did not commit any crimes such that the police would look her up in the database, and that Defendants looked her up by name, rather than license plate number. (*Id.* ¶¶ 3, 159-60.)

In sum, Plaintiff alleges that the Defendants knowingly "obtained, disclosed, or used [her] personal information . . . for a purpose not permitted under the DPPA[,]" and that "[n]one of the Individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of [her] private information." (*Id.* ¶¶ 188-89.) With respect to the County, Plaintiff alleges that "[o]fficers employed by, licensed by, or otherwise accessing through Saint Louis County impermissibly accessed [her p]rivate [d]ata six times." (*Id.* ¶ 90.)

### C. Litigation

Plaintiff filed the instant litigation on July 30, 2013. (Compl.) In Count I, Plaintiff alleges the County and its employees violated the DPPA. (*Id.* ¶¶ 179-205.) In Count II, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that individual employees of the County violated her rights under the Fourth and Fourteenth Amendments and federal law (specifically, the DPPA). (*Id.* ¶¶ 206-23.) In Count III, Plaintiff alleges that the County was aware of the widespread access of private data for personal use; such use was against regulations promulgated by the County; and the County's pervasive failure to take action to stop or prevent such use (including the failure to properly train, monitor, supervise, and properly discipline) amounted to deliberate indifference to Plaintiff's rights and a

policy or custom, all in violation of 42 U.S.C. § 1983.  (*Id.* ¶¶ 224-46.)  Finally, in Count

VI, Plaintiff alleges the County invaded her privacy under common law.  (*Id.* ¶¶ 272-77.)

### III. STANDARD OF REVIEW

The County has moved for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c).  Grant of a 12(c) motion is appropriate when the movant has shown that "no

material issue of fact remains to be resolved and the movant is entitled to judgment as a

matter of law."  *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir.

2008) (quotation omitted); *accord Kampschroer v. Anoka Cnty.*, No. 13-cv-2512

(SRN/TNL), 57 F. Supp. 3d 1124, 1135 (D. Minn. 2014) (same).

A motion for judgment on the pleadings is treated under "the same standard used

to address a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)."

*Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009) (quotation omitted); *accord*

*Kampschroer*, 57 F. Supp. 3d at 1135.  "To withstand a Rule 12(b)(6) motion, a

complaint must contain sufficient factual allegations to 'state a claim to relief that is

plausible on its face.'"  *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

"[A]lthough a complaint need not contain 'detailed factual allegations,' it must

contain facts with enough specificity 'to raise a right to relief above the speculative

level.'"  *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955

(8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed

factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility requires "more than a sheer possibility that the defendant has acted unlawfully[,]" and if a complaint pleads facts that "are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

In deciding a motion for judgment on the pleadings, a court "view[s] all facts pleaded by the nonmoving party as true and grant[s] all reasonable inferences in favor of that party[,]" just as it would in deciding a motion to dismiss under Rule 12(b)(6). *Poehl*, 528 F.3d at 1096; *see Kampschroer*, 57 F. Supp. 3d at 1135.

## IV. MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff's allegations against the County encompass three types of defendants: the County; its employees, including law enforcement; and supervisors employed by the County. (Compl. ¶¶ 16, 42, 44-46, 90.) The basis of these allegations, and the only unique fact alleged by Plaintiff with regard to the County, is that "[o]fficers employed by, licensed by, or otherwise accessing through Saint Louis County impermissibly accessed [her p]rivate [d]ata six times." (*Id.* ¶ 90.)

### A. Statute of Limitations

In responding to the County's motion, Plaintiff incorporates by reference the statute-of-limitations argument from her Response to Defendant Saint Paul's Motion to

7

Dismiss (ECF No. 93), namely, that the statute of limitations on her claims is four years from discovery.  (Pl.'s Mem. in Opp'n at 2, ECF No. 124.)  Because the County has not raised the statute of limitations as a basis upon which judgment should be granted, the Court does not address this issue.

### B. DPPA

With respect to Plaintiff's DPPA claim, the County argues that "the Complaint fails to state a claim under the DPPA because it does not contain sufficient factual allegations indicating that anyone knowingly obtained, disclosed, or used [Plaintiff]'s personal information for a purpose not permitted under the DPPA."  (Cnty.'s Mem. in Supp. at 2, ECF No. 116.)  The County argues that the Court held so with respect to other defendants in the case and the same reasoning should apply equally to it.  (*Id.*)  Plaintiff responds by incorporating the arguments from her Response to Defendant Saint Paul's Motion to Dismiss, (Pl.'s Mem. in Opp'n at 2), namely, that in order to state a claim under the DPPA, she need only allege that the retrieval of her information was made without a permissible purpose; she need not allege for what specific impermissible purpose her information was obtained; and the general facts that she has alleged create an inference that none of the accesses were for a purpose permitted under the DPPA, (Pl.'s Mem. in Opp'n to Def. St. Paul at 9).

"To state a claim under the DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted."  *Mallak v. Aitkin Cnty.,* No. 13-cv-2119 (DWF/LIB), 9 F. Supp. 3d 1046, 1055 (D. Minn. 2014).  A defendant cannot be held

liable for a violation of the DPPA unless he has "obtain[ed], dislos[ed], or us[ed] personal information, *knowing that it is for a purpose other than one of the permissible purposes*." *Kiminski v. Hunt*, No. 13-cv-185 (JNE/TNL), 2013 WL 6872425, at *6 (D. Minn. Sept. 20, 2013) (emphasis added).  In other words, "the person who obtains, discloses, or uses the information must do so *for* an impermissible purpose."  *Id.*; *accord Mallak*, 9 F. Supp. 3d at 1057 ("[T]he Court agrees with Defendants and other courts in this district that to state a claim under the DPPA, a plaintiff must allege that the information was obtained for a purpose not permitted." (quotation omitted)).

Plaintiff has alleged no facts showing that the County itself or its supervisors knowingly disclosed her private data for an impermissible purpose under the DPPA.  Nor do Plaintiff's allegations permit the Court to infer reasonably an impermissible purpose on behalf of these County defendants.  As one court in this District has observed in another DPPA case,

> Plaintiffs have failed to plead a plausible claim that Blue Earth County or the Supervisor Does themselves obtained, disclosed, or used personal information for an unpermitted purpose.  Plaintiffs allege that Blue Earth County provided computers for employees to access DVS information and failed to control illegal access to the extent that it became a custom or practice.  Even if true, this is not sufficient to plead a claim they obtained, disclosed, or used personal information themselves.   Plaintiffs also allege Blue Earth County "authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing, or using of Plaintiffs' private personal information by Individual Defendants."  (Compl. ¶ 400).  This simply recites the language of the statute without providing any supporting factual allegations lifting the claim to a level of plausibility. *See* Twombly, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do.").  Common

> sense suggests, and nothing in the Complaint alleges otherwise, that Blue Earth County provided DVS access to law-enforcement personnel for law-enforcement reasons. Therefore, Plaintiffs fail to plausibly allege that Blue Earth County or Supervisor Does personally used, disclosed, or obtained personal information for a non-permitted purpose. As such, this Court will grant Blue Earth County's Motion to dismiss for failure to state a claim as to Blue Earth County and the Supervisor Does.

*Jessen v. Blue Earth Cnty.*, No. CIV. 14-1065 RHK/JSM, 2014 WL 5106870, at *4 (D. Minn. Oct. 10, 2014). This reasoning is equally applicable here. Plaintiff's allegations against the County and its supervisors mirror those described in *Jessen*, and those asserted against most of the other defendants in this case. The only unique fact alleged is the number of times the County allegedly accessed her information. "This District has previously dismissed entity defendants, like [the] County, when a plaintiff fails to specifically allege and implicate the county's direct participation in any alleged DPPA violation . . . ." *Doerr v. Hoffman*, No. 13-cv-3108 (MJD/LIB), 2014 WL 8140803, at *5 (D. Minn. Sept. 15, 2014), *adopted in part and rejected in part*, 2015 WL 1197060 (D. Minn. Mar. 16, 2015) (rejecting analysis of Minnesota Government Data Practices Act claim); *accord Shambour v. Carver Cnty.*, No. 14-cv-566 (RHK/LIB), 2014 WL 3908334, at *3 (D. Minn. Aug. 11, 2014) ("In the absence of any factual allegations to the contrary, the only reasonable inference to be drawn is that these [entity] Defendants provided law-enforcement officers with access to the DVS database for the purpose of carrying out their jobs, which is permitted under the DPPA.")

Similarly, with respect to County employees, i.e., the Defendant Individuals (*see* Compl. ¶¶ 44, 45, 90, 188-91, 195, 198), the Court concludes that Plaintiff has not

plausibly alleged that her private data was accessed for an impermissible purpose. As this Court previously observed, while Plaintiff asserts that she is "well-connected to" and has a "high profile in" the law enforcement community, Plaintiff has pleaded no facts (other than her prior marriage to a law enforcement officer) "showing that she was well-known in that community as a whole and, therefore, only through speculation would the Court be able to infer that the alleged impermissible accesses by *these defendants* occurred due to any notoriety Plaintiff may have had in the law-enforcement community." ___ F. Supp. 3d ____, 2015 WL 144804, at *7 (D. Minn. 2015) (quotation omitted).) There simply is no factual basis from which to infer reasonably that Plaintiff has achieved the level of notoriety that other courts in this District have found significant. *Cf. Karasov v. Caplan Law Firm, P.A.*, No. 14-cv-1503 (SRN/BRT), ___ F. Supp. 3d ____, 2015 WL 439509, at *1, 9-10 (D. Minn. Feb. 3, 2015) (plaintiff was a state district court judge, a position which likely brought her into contact with law enforcement officers employed by the various entity defendants, and involved in a "widely publicized disciplinary proceeding"); *Kampschroer*, 57 F. Supp. 3d at 1139 ("Plaintiffs are local media personalities in Minnesota who, during their career in television news, have met and interviewed numerous law-enforcement personnel."); *Taylor v. City of Amboy*, No. 14-cv-722 (PJS/TNL), 2014 WL 5438498, at *1, 3 (D. Minn. Oct. 24, 2014) (plaintiff was well-known law-enforcement officer who "became involved in an altercation with a stranger in his home that not only required a law-enforcement response, but that ultimately resulted in [plaintiff] being convicted of assault and disorderly conduct"); *see also Engebretson v. Aitkin Cnty.*, No. 14-cv-1435 (ADM/FLN), 2015 WL 224734, at *4

(D. Minn. Jan. 15, 2015) (plaintiff worked as a law enforcement officer and cluster of lookups occurred around publication of newspaper article regarding plaintiff's sexual harassment and retaliation suit against chief of police); *Myers v. Aitkin Cnty.*, No. 14-cv-473 (JRT/LIB), 2014 WL 7399182, at *1, 14 (D. Minn. Dec. 29, 2014) (plaintiff performed public legal work making her known to law enforcement, plaintiff was actively involved in several non-profit organizations, and plaintiff's husband was a member of law enforcement); *Kennedy v. City of Braham*, No. 14-cv-226 (SRN/SER), ___ F. Supp. 3d ____, 2014 WL 7073322, at *1-2, 18-19 (D. Minn. Dec. 12, 2014) (plaintiff identified specific government employee, whom she directly interacted with, who admitted to accessing plaintiff's information and, upon hearing about plaintiff's inquiry into her records, called plaintiff and told her "let's be clear, you asked me to look you up and it was four times" and plaintiff had not asked for her records to be accessed).

Plaintiff also has not alleged facts establishing a particular connection to the County. *See* Prior R&R, 2014 WL 4449674, at *22 ("But while Plaintiff contends that it is 'particularly pertinent' that she was 'known to other police officers and had a contentious relationship with certain members of law enforcement,' there are no facts alleging that such individuals were employed by Dakota County."); *see also Myers*, 2014 WL 7399182, at *14 ("[M]ost of the searches of [plaintiff's] name occurred in counties or cities near where she works."); *Pinski v. City of Cottage Grove*, No. 14-cv-325 (DWF/SER), 2014 WL 5810364, at *5 (D. Minn. Nov. 7, 2014) ("[T]he lookups primarily occurred in Cottage Grove where [plaintiff] worked."); *Jessen*, 2014 WL 5106870, at *1, 5 (plaintiff used to work for defendant county and plaintiff's ex-fiancé

still worked for county and had access to records); *Heglund*, 2014 WL 4414821, at *6 (plaintiff was "well-known by defendants by virtue of her work as a law enforcement officer in the area where a majority of the look-ups are identified" and "majority of the look-ups occurred in [county] where [plaintiff] was best known"); *cf. Garn v. City of Brooklyn Park*, No. 14-cv-4196 (PAM/TNL), 2015 WL 1321568, at *1, 4 (plaintiff was known to law enforcement through her work on two publications related to law enforcement and operating hockey league in which a number of law enforcement personnel participated, and alleged lookups connected with the City of St. Paul occurred around the same time plaintiff kicked a St. Paul police officer out of the league; plaintiff's claim against the City of St. Paul was "conceivable," but dismissed without prejudice and plaintiff given leave to plead a more specific factual connection). *But see Rollins v. City of Albert Lea*, No. 14-cv-299 (SRN/HB), ___ F. Supp. 3d ____, 2014 WL 7534658, at *17 (D. Minn. Dec. 17, 2014) (plaintiff had tenuous relationship with mother and uncle, both of whom had access due to their employment with state and local government entities; plaintiff had other family members working in law enforcement; and plaintiff "fear[ed] that her mother, her uncle, or other family members employed by state and local agencies, and those associated with those family members, have been obtaining her information for purposes not permitted by the DPPA").

In sum, pleadings must "plausibly suggest[] (not merely [be] consistent with) [liability]." *Twombly*, 550 U.S. at 557. "[T]he court will not infer from bare, conclusory allegations that defendants' purposes were improper." *Bass v. Anoka Cnty.*, 998 F. Supp. 2d 813, 821 (D. Minn. 2014) (citation omitted). "[Plaintiff's] failure to make

any specific allegations regarding her connections to [County] law enforcement at the time of the allegedly improper look-ups means that she has not plausibly pled that [the County's] activities were indeed improper." *Garn*, 2015 WL 1321568, at *4; *cf. Jessen*, 2014 WL 5106870, at *5 ("And Plaintiffs do not suffer the same fate as the plaintiff in *Ray v. Anoka County*, who failed to allege any connection between the unnamed defendant, who she speculated was her ex-husband, and the jurisdictions from which her records were accessed." (citing 24 F. Supp. 3d 843, 840 (D. Minn. 2014))). Thus, the Court concludes that Plaintiff has failed to state a DPPA claim against the County and therefore recommends that the County's motion for judgment on the pleadings be granted with respect to Count I.

### C. Section 1983 Claims

The County also moves for judgment on the pleadings concerning Plaintiff's § 1983 claims based on violations of the DPPA and her Fourth and Fourteenth Amendment rights.

"Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any rights, privileges or immunities secured by the Constitution and laws of the United States." *Midwest Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1195 (8th Cir. 2013) (quotations omitted); *see also Potocnik v. Carlson*, No. 13-cv-2093 (PJS/JJG), 9 F. Supp. 3d 981, 996 (D. Minn. 2014) ("Section 1983 'authorizes suits to enforce individual rights under federal statutes as well as the Constitution.'" (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005)). Specifically,

14

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.   Importantly, "[s]ection 1983 does not itself create any substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'"   *Kiminski*, 2013 WL 6872425, at *9 (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)); *accord Mallak*, 9 F. Supp. 3d at 1059 ("Section 1983 is not itself a source of substantive rights, but is the procedural vehicle through which to vindicate federal rights elsewhere conferred.").

## 1. DPPA

The County argues that Plaintiff did not "plead an underlying deprivation of any right secured by the DPPA . . . [and] a violation of the DPPA is not actionable under section 1983 in any event[.]"   (Cnty.'s Mem. in Supp. at 2.)   The County argues that this Court held so in the Prior R&R on common facts, and therefore it should hold the same with respect to the County.   (*Id.*)

Because Plaintiff has not sufficiently pled a violation of the DPPA, the Court finds that there can be no § 1983 claim with respect thereto.   "Section 1983 does not itself create any substantive rights, 'but merely provides a method for vindicating federal rights elsewhere conferred.'"   *Kiminski*, 2013 WL 6872425, at *9 (quoting *Oliver*, 510 U.S. at 271); *accord Bass*, 998 F. Supp. 2d at 824 ("Standing alone, § 1983 does not establish

any substantive rights.  An underlying constitutional or statutory violation is a predicate to liability under § 1983." (quotation omitted)).   There are no federal rights to be vindicated with respect to the DPPA because no DPPA violation has been pled, and thus no § 1983 claim can arise thereunder.  *Gulsvig v. Mille Lacs Cnty.*, No. 13-cv-1309 (JRT/LIB), 2014 WL 1285785, at *7 (D. Minn. Mar. 31, 2014) ("Because the Court finds that Plaintiffs have failed to state a claim against the Commissioner Defendants under the Act, no statutory right exists against these Defendants upon which to base a Section 1983 cause of action.").

Furthermore, even if Plaintiff had sufficiently pled a DPPA claim against the County, the Court finds that the DPPA's comprehensive enforcement scheme forecloses a § 1983 remedy for the reasons stated in Section III(A)(2)(a) of the Court's Prior R&R, which are expressly incorporated herein.[2]  2014 WL 4449674, at *11-14.  "The courts in this district . . . have determined that the DPPA 'does not leave open the door for a § 1983 action.'"  *Mallak*, 9 F. Supp. 3d at 1061 (quotations omitted); *accord Rollins*, 2014 WL 7534658, at *6 ("This Court's determination that Plaintiff may not use § 1983 to enforce her rights under the DPPA aligns with decisions from several other courts, including multiple district courts within the United States Court of Appeals for the Eighth Circuit." (citing cases)); *Heglund*, 2014 WL 4414821, at *6 ("Courts in this district have repeatedly found the comprehensive nature of the DPPA's remedial scheme indicates Congress's intent to foreclose a remedy under § 1983." (quotation omitted)).

---

[2] As stated in the Prior R&R, the Court need not reach the issue of whether the DPPA is a statutory embodiment of the right to privacy because, even assuming the DPPA creates a federally protected right, the DPPA's comprehensive enforcement scheme forecloses a § 1983 remedy.  2014 WL 4449674, at *12.

Accordingly, the Court recommends that Plaintiff's § 1983 claims against the County based on violations of the DPPA be dismissed for failure to state a claim.

### 2. Constitutional Privacy Claims

The County also moves for judgment on the pleadings with respect to Plaintiff's constitutional privacy claims based on the Fourth and Fourteenth Amendments because Plaintiff "[did] not plead an underlying deprivation of any right secured by . . . the Constitution[.]"  (Cnty.'s Mem. in Supp. at 2.)  Plaintiff incorporates by reference the constitutional arguments set forth in her Memorandum of Law in Opposition to Commissioners' Motion to Dismiss (ECF No. 30) and Memorandum of Law in Opposition to Dakota County's Motion to Dismiss (ECF No. 63),  specifically that (1) the disclosure of her private information was "a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information," *Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir. 1993), and thus rises to the level of a violation of the constitutional right to privacy, (Mem. in Opp'n to Comm'rs at 28-29), and (2) the Fourth Amendment is implicated because the government intrusion into her DPS records constituted an unlawful search and seizure, (*id.* at 31).

Regardless of whether a claim is analyzed under the Fourth or Fourteenth Amendment, a constitutional privacy claim requires a reasonable expectation of privacy in the information at issue.  *See Bass*, 998 F. Supp. 2d at 822.  "A constitutional privacy claim 'depends upon whether the plaintiff had a reasonable expectation of privacy in the information.'"  *Id.* (quoting *Van Zee v. Hanson*, 630 F.3d 1126, 1129 (8th Cir. 2011)).  "According to the Eighth Circuit, these standards set a high bar and many disclosures,

regardless of their nature, will not reach the level of a constitutional violation." *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1075 (D. Minn. 2014) (quotation omitted). The constitutional privacy protection "extends only to highly personal matters representing the most intimate aspects of human affairs." *McCaslin v. Campbell*, 108 F.3d 1382, at *2 (8th Cir. 1997) (per curiam) (quotation omitted). "A violation of the constitutional right to privacy requires the information disclosed to be 'a shocking degradation or an egregious humiliation . . . , or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information.'" *Kampschroer*, 57 F. Supp. 3d at 1143 (alteration in original) (quoting *Mallak*, 9 F. Supp. 3d at 1061).

The Court holds that the information alleged to be impermissibly accessed in this case does not meet this high threshold. Plaintiff alleged that the private data accessed "included[ed] her home address, color photograph or image, date of birth, eye color, height, weight, and driver identification number." (Compl. ¶ 96.) Courts in this district have uniformly rejected any legitimate expectation of privacy in this information. *See, e.g.*, *Mallak*, 9 F. Supp. 3d at 1062 ("No case has yet found that a constitutional right to privacy exists under the Fourth or Fourteenth Amendment for the type of information typically found in driver's licenses and protected by the DPPA (address, color photograph, date of birth, weight, height, and eye color)."); *see also Gulsvig*, 2014 WL 1285785, at *8 ("Courts have repeatedly found that this type of information—that which is typically available in a motor vehicle record—is *not* the kind of intimate or extremely

personal information that gives rise to constitutional protection."). Because there is no

constitutional violation, a § 1983 claim will not lie with respect thereto.

For these reasons, and as more fully discussed in Section III(A)(2)(b) of the Prior

R&R, which is incorporated by reference herein, the Court concludes that Plaintiff has no

reasonable expectation of privacy in her driver's license information. 2014 WL 4449674,

at *14-19. Because Plaintiff has no reasonable expectation of privacy in the information

allegedly accessed, this Court recommends that Plaintiff's § 1983 constitutional privacy

claims against the County also be dismissed.

### D. Common Law Invasion of Privacy

The County also moves for judgment on the pleadings regarding Plaintiff's

common-law, intrusion-upon-seclusion privacy claim (Count VI). The County argues

that "the alleged lookups do not give rise to a claim for invasion of privacy under state

law because they do not involve an intrusion that would be highly offensive to a

reasonable person." (Cnty.'s Mem. in Supp. at 2.) The County argues that, because the

Court reached this conclusion in the Prior R&R with respect to Plaintiff's privacy claims

against similarly situated defendants, the same reasoning should apply to Plaintiff's claim

against the County. (*Id.*) Plaintiff counters by incorporating by reference her arguments

from her Memorandum of Law in Opposition to Dakota County's Motion to Dismiss.

(Pl.'s Mem. in Opp'n at 2.) Specifically, Plaintiff argues that while one lookup might not

be highly offensive, here, "dozens of law enforcement officials impermissibly obtained

[her] personal information more than 130 times[,]" and the "sheer numbers of the

accesses would lead a reasonable person to find the intrusion 'highly offensive.'"  (Pl.'s Mem. in Opp'n to Dakota Cnty. at 39.)

To prove a claim of intrusion upon seclusion, a plaintiff must demonstrate: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy.  *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App. 2001).  What is sufficiently offensive to trigger this tort is generally a question of fact, unless "reasonable persons can draw only one conclusion from the evidence."  *Id.* at 745; *see also Bass*, 988 F. Supp. 2d at 813 ("Invasion of privacy claims involve a preliminary determination of offensiveness which must be made by the court in discerning the existence of a cause of action." (quotation omitted)).  Plaintiff "must meet a high threshold of offensiveness and expectation of privacy to have a viable claim for intrusion upon seclusion."  *Rasmusson*, 991 F. Supp. 2d at 1078.

Plaintiff concedes that "one person intruding in one instance upon [her] privacy . . . might not be 'highly offensive,'" but argues that the number of times her information was accessed makes the accesses that occurred highly offense.  (Pl.'s Mem. in Opp'n to Dakota Cnty. at 39.)  Plaintiff's argument essentially hinges on the volume of accesses that allegedly occurred.  Six of the more than 130 accesses are allegedly attributable to the County.  But, even where a person's information has been allegedly accessed at a similar or (much) more frequent rate than Plaintiff's, the courts of this District have uniformly held that the accessing of the information at issue is not highly offense to a reasonable person.  *See, e.g., Myers*, 2014 WL 7399182, at *2, 20-21 (84 accesses); *Rollins*, 2014 WL 7534658, at *2, 10-12 (574 accesses); *Kampschroer*, 57 F.

Supp. 3d at 1133, 1144-45 (1,380 and 92 accesses); *Heglund*, 2014 WL 4414821, at *2, 6-7 (446 and 34 accesses); *Ray*, 24 F. Supp. 3d at 845, 850 (440 accesses); *Mallak*, 9 F. Supp. 3d at 1049, 1064-65 (190 accesses); *Potocnik*, 9 F. Supp. 3d at 986, 1001-02 (75 accesses); *Bass*, 998 F. Supp. 2d at 818, 824-25 ("hundreds" of accesses); *see also Nelson v. Jesson*, No. 13-cv-340 (RHK/JJK), 2013 WL 5888235, at *8 (D. Minn. Nov. 1, 2013) ("While the unauthorized access of another's motor-vehicle records is no doubt an intrusion into another's private affairs, no reasonable person could consider the intrusion in this case highly offensive.").

Consequently, for the reasons stated above and more fully laid out in Section III(B)(4) of the Prior R&R, which is hereby incorporated by reference, this Court concludes that Plaintiff has failed to state a claim for intrusion upon seclusion against the County because the alleged intrusions would not be highly offensive to a reasonable person.   2014 WL 4449674, at *25-27.   Therefore, the Court recommends that the County's motion for judgment on the pleadings be granted with respect to Count VI.

[Continued on next page.]

## V. RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the County's Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (ECF 114) be **GRANTED**.


Date: June ___1___, 2015                                        ___*s/ Tony N. Leung*___
                                                               Tony N. Leung
                                                               United States Magistrate Judge
                                                               for the District of Minnesota


                                                               *Loeffler v. City of Anoka et al.*
                                                               Case No. 13-cv-2060 (MJD/TNL)


## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.