UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Jennie Marie Loeffler | Case No. 13-cv-2060 (MJD/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| City of Anoka, *et al.* | |
| Defendants. | |

---

Jonathan A. Strauss, Sapientia Law Group, PLLC, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402 (for Plaintiff); and

Nathan N. LaCoursiere, Duluth City Attorney's Office, 410 City Hall, 411 West First Street, Duluth, MN 55802 (for Defendant Rebecca Kopp).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Rebecca Kopp's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 156). Defendant's motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Michael J. Davis, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. (ECF No. 161). Based upon the record, memoranda, and proceedings herein, this Court recommends that the motion to dismiss be granted.

I. **BACKGROUND**

Plaintiff Jennie Marie Loeffler filed suit on July 30, 2013, alleging, among other claims, violations of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721 *et seq.* (Compl., ECF No. 1). Loeffler sued various Minnesota counties, cities, and

governmental agencies and officers, myriad John, Jane, and Entity Doe placeholder defendants, and a "female officer to be later named, acting in her individual capacity as a law-enforcement officer for the City of Duluth." (Compl., at 1 (caption), 8 ¶ 43). As alleged by Loeffer, she was married to a Lakeville police officer for approximately seventeen years. (Compl. ¶ 52). Loeffler's then-husband "had an extra-marital affair with Defendant female officer to be later named, a Duluth law-enforcement officer." (Compl. ¶ 54). Loeffler "discovered the affair between her then husband . . . and that Defendant female officer, and Loeffler confronted that Defendant about the affair on September 30, 2009." (Compl. ¶ 55). Loeffler and her husband finalized their divorce in December 2012. (Compl. ¶ 59).

In May 2011, Loeffler attempted to acquire an audit of her driver's license information from the Minnesota Department of Public Safety, but was told one "could not be provided . . . unless she had a specific reason for requesting that information." (Compl. ¶¶ 56–58). In April 2013, Loeffler again sought an audit of her driver's license information and, on April 17, 2013, received an audit covering her private driver's license information from 2003 through 2013. (Compl. ¶¶ 60–62). The audit revealed, among other accesses, that officers affiliated with the City of Duluth accessed Loeffler's driver's license data ten times. (Compl. ¶ 70). One of the accesses by the City of Duluth occurred September 30, 2009, which Loeffler alleges was "Defendant Duluth officer later to be named" because it occurred on "the same day Plaintiff confronted that Defendant about the extra-marital affair with her then-husband." (Compl. ¶ 71; *see* Compl. ¶ 134).

2

Plaintiff's claims against the City of Duluth and Defendant "female officer to be later named" are for violations of the DPPA, 42 U.S.C. § 1983, and common law invasion of privacy. (Compl. ¶¶ 179–223, 272–77). The City of Duluth answered the entire complaint, including those portions directed at the Defendant "female officer to be later named," indicating the City was without sufficient information to respond to the factual assertions related to her. (City of Duluth Answer ¶¶ 13–14). The City denied the claims as related to it and Defendant "female officer to be later named." (City of Duluth Answer ¶¶ 19–27, 35–37).

The City of Duluth then moved to dismiss the claims against it. (ECF Nos. 49, 51). For DPPA claims, this Court recommended granting the City's motion with respect to the City but denying it to the extent it sought dismissal of the unnamed Duluth police officer. *Loeffler v. City of Anoka*, ECF No. 102, at 65–74, 2014 WL 4449674, at *32–*37 (D. Minn. June 24, 2014). This Court also recommended dismissal of Loeffler's § 1983 and invasion of privacy claims against all parties. *Id.* at *36–*37. The City responded to the Report and Recommendation, noting that it did not intend to address the claims against the unnamed Duluth police officer because she was not a party to the litigation yet, but would do so if she were added. (ECF No. 103; *see* ECF No. 107). The Court left open any judicial decision regarding the claims against the unnamed Duluth officer, but adopted the recommendation to grant the City's motion to dismiss. *Loeffler v. City of Anoka*, ECF No. 113, 2014 WL 4449692, at *1 (D. Minn. Sept. 9, 2014). Following

motion practice related to all other defendants,[1] only the unnamed Duluth police officer remains.

On August 21, 2015, Loeffler sought leave to file a motion for limited discovery in order to seek an audit from the Minnesota Department of Public Safety indicating the identity of the Duluth accessors to her driver's license info. (ECF No. 132). The Court granted leave to file a motion, (ECF No. 133), and Loeffler subsequently filed her motion and memorandum. (ECF No. 134, 135). In an attached affidavit, Loeffler indicated she suspected the unnamed Duluth police officer to be Rebecca Kopp. (Aff. of Jennie Loeffler ¶¶ 10–13, ECF No. 136). On December 16, 2015, the Court permitted Loeffler to conduct limited discovery to determine the identities of the individuals from the Duluth Police Department who accessed her driver's license information. (ECF No. 140). Loeffler subpoenaed the Minnesota Department of Public Safety on December 18, 2015, and received its response on January 13, 2016. (Aff. of Jonathan Strauss ¶¶ 3–4, ECF No. 165; *see* Am. Compl. ¶¶ 4–5, ECF No. 154).

On February 16, 2016, Loeffler moved to amend her complaint, (ECF No. 142), which the Court granted on February 29, 2016. (ECF No. 152). Loeffler filed her Amended Complaint on March 3, 2016, replacing the unnamed Duluth police officer defendant with "Rebecca Kopp, acting in her individual capacity as a law-enforcement officer for the City of Duluth." (Am. Compl., at 1 (caption), 12 ¶ 50). The claims against the substituted defendant remain the same. An attachment to the Amended Complaint shows Kopp accessed Loeffler's driver's license information once on September 19, 2009

---

[1] The final motion was decided July 2, 2015. (ECF No. 131).

(at 10:05 pm), five times on September 21, 2009 (four times at 12:54 am and once at 12:55 am), once on September 30, 2009 (at 11:52 pm), and once on June 1, 2010 (at 12:41 am). (Am. Compl., at Ex. B). Defendant Rebecca Kopp was served with the Amended Complaint on March 28, 2016 after "some difficulty serving her." (Strauss Aff. ¶ 6).

Kopp then moved to dismiss Plaintiff's Amended Complaint. (ECF No. 156). Kopp argues Plaintiff's DPPA claim against her is time barred under the four-year statute of limitations found at 28 U.S.C. § 1658(a). Given Loeffler did not assert claims against Kopp until the Amended Complaint that was filed March 3, 2016, Kopp argues, the statute of limitations expired in September 2013 and June 2014 for the accesses at issue. Loeffler disagrees, principally asserting her Amended Complaint relates back to her initial Complaint. As support for her argument, Loeffler attached letters she sent to the City of Duluth on May 17, 2013 pursuant to state law. (Strauss Aff. ¶ 7, Ex. 2). The letters stated that personnel from the City of Duluth accessed Loeffler's driver's license information at least ten times and additionally noted that "Officer Rebecca Kopp, a Duluth Police Officer, may have accessed [Loeffler's] information or otherwise used [her] information for personal, inappropriate purposes." (Strauss Aff., at Ex. 2). The letter also demanded that Kopp "cease accessing [Loeffler's] information." (Strauss Aff., at Ex. 2). The City responded on May 22, 2013, indicating it would investigate Loeffler's claims. (Strauss Aff. ¶ 8, Ex. 3).

Loeffler additionally supplied an account that she received a telephone call in August 2013, after filing her complaint, from her "former sister-in-law informing [her]

5

that the Duluth News Tribune had published a newspaper article about this lawsuit." (Decl. of Jennie Loeffler ¶ 1, ECF No. 166). The news article notes that Loeffler's ex-husband was having an affair with a female Duluth police officer who was later confronted by Loeffler. (Loeffler Decl, at Ex. AA). Loeffler's former sister-in-law "told [Loeffler] that Rebecca Kopp had seen the article and informed [Loeffler's ex-husband], who in turn informed his family about it." (Loeffler Decl. ¶ 3). Loeffler asserts that "although [she] strongly suspected that Ms. Kopp was the Duluth Jane Doe who had accessed [her] driver's license information, [Loeffler] did not name [Kopp] until [she] received confirmation of this information from DPS during discovery that it was indeed Ms. Kopp." (Loeffler Decl. ¶ 5). Loeffler indicates she "did not want to wrongly accuse someone of accessing [her] information, so [she] waited to name Ms. Kopp until [she] was certain it was her that did so." (Loeffler Decl. ¶ 5).

## II.   ANALYSIS

Claims brought under the DPPA are subject to a four-year statute of limitations that begins to run on the date the violation occurred. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 939–43 (8th Cir. 2015) (discussing 28 U.S.C. § 1658(a)). Loeffler filed her amended complaint on March 3, 2016. Thus, any DPPA claims relating to accesses occurring before March 3, 2012 are time-barred—which would be all of Loeffler's claims against Kopp—unless some other statute or rule provides otherwise. Loeffler points the Court to Federal Rule of Civil Procedure 15(c), asserting that her amended complaint relates back to her original complaint. Loeffler filed her original complaint on July 30, 2013. If her amended complaint relates back to her original complaint, as she argues,

6

only claims from prior to July 30, 2009 would be time-barred—thus saving all of Loeffler's claims against Kopp.

Rule 15(c)(1) provides that an amended pleading relates back to the date of an original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B)[2] is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). The purpose of relation back is "to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 550 (2010).

The Supreme Court has held that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Krupski*, 560 U.S. at 541. Thus, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper

---

[2] Rule 15(c)(1)(B) reads: "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The parties do not dispute that this requirement has been met.

The parties do not argue that the present motion falls solely under Rule 15(c)(1)(B). The plain language of Rule 15(c) logically follows; amendments to parties against whom claims are asserted, as presented in the instant motion, are addressed by Rule 15(c)(1)(C), rather than Rule 15(c)(1)(B), which addresses changes in the claims asserted.

party's identity." *Id.* at 548. In conducting this analysis, "it would be error to conflate knowledge of a party's existence with the absence of mistake." *Id.* When looking at what constitutes a mistake under Rule 15(c)(1)(C), the Supreme Court noted:

> A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed. 2009); *see also* Webster's Third New International Dictionary 1446 (2002) (defining "mistake" as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts").

*Id.* at 548–49. However, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 552.

In looking at DPPA cases where a plaintiff substitutes a Doe defendant for a named defendant, Courts in this District have recently held that an amendment does not relate back under Rule 15(c)(1)(C)(ii). *Heglund v. Aitkin Cnty.*, Case No. 14-cv-296 (ADM/LIB), 2016 WL 3093381, at *4–*6 (D. Minn. June 1, 2016); *Potocnik v. Carlson*, Case No. 13-cv-2093 (PJS/HB), 2016 WL 3919950, at *3–*5 (D. Minn. July 15, 2016); *Krekelberg v. Anoka Cnty.*, Case No. 13-cv-3562 (DWF/TNL), 2016 WL 4443156, at *3–*6 (D. Minn. Aug. 19, 2016); *Engebretson v. Aitkin Cnty.*, Case No. 14-cv-1435 (ADM/FLN), 2016 WL 5400363, at *5–*6 (D. Minn. Sept. 26, 2016); *Taylor v. City of Amboy*, Case No. 14-cv-722 (PJS/TNL), 2016 WL 5417190, at *2 (D. Minn. Sept. 27, 2016). These courts held that naming a Doe defendant does not constitute mistake, but

instead reflects a deliberate choice made by a plaintiff due to lack of knowledge. *Heglund*, 2016 WL 3093381, at *5; *Potocnik*, 2016 WL 3919950, at *5; *Krekelberg*, 2016 WL 4443156, at *5. As stated in *Potocnik*:

> a plaintiff who sues a John Doe defendant does not do so because of an error, misconception, misunderstanding, or erroneous belief. Nor has she committed a "wrong" action on account of inadequate knowledge. Again, when Potocnik sued hundreds of John and Jane Doe defendants, she was not doing so because she believed that hundreds of people named John Doe or Jane Doe had unlawfully accessed her DVS information. Instead, she sued hundreds of defendants under fictitious names because she did not *know* who had unlawfully accessed her DVS information—and, by using fictitious names, Potocnik was accurately communicating that fact. This is not a "mistake," and thus the Court cannot find that Radke, Thomsen, and Turner knew or should have known that Potocnik would have sued them in her original complaint "but for a mistake concerning the proper party's identity."

2016 WL 3919950, at *5 (emphasis in original).

This Court agrees with reasoning found in *Heglund*, *Potocnik*, and *Krekelberg*. Loeffler, in her original complaint, named a "female officer to be later named, acting in her individual capacity as a law-enforcement officer for the City of Duluth." This was not a mistake, but "was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity . . . ." *Krupski*, 560 U.S. at 552. Everything in Loeffler's original complaint showcases her knowledge of the proper identity of "female officer to be later named, acting in her individual capacity as a law-enforcement officer for the City of Duluth." Loeffler detailed particular facts with respect to the unnamed Duluth police officer, including an affair with her then-husband and a confrontation on

September 30, 2009.³ Thus despite this knowledge, Loeffler deliberately chose to sue a "female officer to be later named, acting in her individual capacity as a law-enforcement officer for the City of Duluth" rather than sue Kopp from the start. This deliberate choice cannot constitute a mistake. *Heglund*, 2016 WL 3093381, at \*5; *Potocnik*, 2016 WL 3919950, at \*5; *Krekelberg*, 2016 WL 4443156, at \*5.

Loeffler asserts that she could not have named Kopp in her original complaint because she was not certain Kopp conducted the look-ups at issue. The Court disagrees. In May 2013, before filing suit, Loeffler informed the City of Duluth that Kopp may have illegally accessed her driver's license information. *See* MINN. STAT. § 466.05, SUBD. 1 (under Minnesota law, any person claiming damages from a municipality or municipal employee "shall cause to be presented to the governing body of the municipality . . . a notice stating the time, place and circumstances thereof, the names of the municipal employees known to be involved, and the amount of compensation or other relief demanded."). Despite accusing Kopp of accessing her driver's license information in her May 2013 letter to the City of Duluth, Loeffler declined to name Kopp in her July 2013 complaint. This, once again, reflects a deliberate choice rather than a mistake concerning Kopp's identity.

---

³ It may readily be argued that, as compared to the John and Jane Does discussed in *Heglund*, *Potocnik*, and *Krekelberg,* the details relating to the unnamed Duluth police officer, as well as setting her apart from the other John and Jane Doe defendants named, constitute an even stronger argument that Loeffler's naming of a Doe defendant was not a mistake, but instead a deliberate choice. In *Heglund*, *Potocnik*, and *Krekelberg*, the plaintiffs asserted they did not know the identities of the individuals who looked up their driver's license information, thereby requiring use of Doe defendant placeholders. Here, Loeffler suspected a particular individual rather than some unnamed person, but opted nonetheless for a Doe defendant placeholder.

Loeffler cites the possibility of Rule 11 sanctions as a deterrent to her naming Kopp in her original complaint. Under Rule 11, pleadings represent, to "the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Loeffler's original complaint already set forth sufficient factual contentions that would likely have evidentiary support following further discovery. Indeed, Loeffler noted she confronted an unnamed Duluth police officer for having an affair with Loeffler's then-husband. That very night, someone from the Duluth Police Department accessed Loeffler's driver's license information. Loeffler's post-hoc citation to Rule 11 to explain away her deliberate choice to not name Kopp in her original complaint is unavailing.

Loeffler submitted information—albeit buried in several layers of hearsay where Loeffler heard from her sister-in-law who heard from Loeffler's ex-husband who relayed what Kopp told him—that Kopp may have known she was subject to suit. *Krupski* noted that "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." 560 U.S. at 550. But as concluded above, there was no misunderstanding in this case. Rather, Loeffler made a deliberate choice to name a "female officer to be later named, acting in her individual capacity as a law-enforcement officer for the City of Duluth," instead of naming Kopp directly.

Finally, Loeffler asserts equitable tolling and equitable estoppel prevent Kopp from relying upon a statute of limitations defense in this case. Under the equitable tolling theory, Loeffler argues that because the Minnesota Department of Public Safety denied her an audit in 2011, the statute of limitations should not bar her claims because she was prevented from filing suit earlier because she did not have the requisite information regarding unlawful accesses to her driver's license information. Had Loeffler sued Kopp in the first instance, rather than a "female officer to be later named, acting in her individual capacity as a law-enforcement officer for the City of Duluth," her claims would not be barred by the statute of limitations. Regarding her assertion of equitable estoppel, such assertion requires some dishonest or unlawful conduct by defendants. *Potocnik*, 2016 WL 3919950, at *5 (discussing *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008 (8th Cir. 1991), and *Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989)). There is no indication Kopp or her employer, the City of Duluth, engaged in any dishonest or unlawful conduct that misled Loeffler or prevented her from bringing timely claims. Rather, as noted above, Loeffler made a deliberate choice to name a Doe defendant instead of Kopp. Thus, there is no basis to estop Kopp from asserting statute of limitations defenses to Loeffler's claims. *See Potocnik*, 2016 WL 3919950, at *5; *Engebretson*, 2016 WL 5400363, at *6; *see also Krekelberg*, 2016 WL 4443156, at *6.

In sum, Loeffler's amended complaint does not relate back to her original complaint. Loeffler's amended complaint was filed March 3, 2016. Given the four-year statute of limitations on DPPA claims, Loeffler's claims against Kopp alleging look-ups

in September 2009 and June 2010 are all time-barred. Therefore, this Court recommends granting Kopp's motion to dismiss.[4]

[Continued on next page.]

---

[4] This Court recognizes the implications of this result given that it may well be argued that Loeffler's claims against Kopp are precisely for the type of inappropriate accesses to driver's license information contemplated by the DPPA. *See McDonough*, 799 F.3d at 938 (explaining the purpose of the DPPA). "A statute of limitations by its nature contains an element of harshness because it is meant to foreclose suit by the mere passage of time." *Goetz v. Sec'y of Health and Human Servs.*, 4 Fed. Appx. 827, 830 (Fed. Cir. 2001). The statute of limitations, rather than a rigid application of the Federal Rules of Civil Procedure, serve to defeat Plaintiff's claims.

### III. RECOMMENDATION

Based on the foregoing and the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Rebecca Kopp's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (ECF No. 156), be **GRANTED** and this matter be **DISMISSED WITH PREJUDICE**.


Date: October 25, 2016
                                                    *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge
                                                    District of Minnesota

                                                    *Loeffler v. City of Anoka et al.*
                                                    Case No. 13-cv-2060 (MJD/TNL)


### NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.